today is Hermandad de Empleados del Fondo del Seguro del Estado Incorporated at All v. United States at All, Appeal Number 192243. Alright, Counselor, could you introduce yourself again for the record? Yes, my name is Rolando Manuel Jimenez and I'm representing Appellants, the Employees and Physicians Union and Lisbeth Mercado. May it please the Court. Are you ready to proceed? Yes, Your Honor. May it please the Court. I would like to reserve two minutes of my time for rebuttal. You may. The District Court dismissed under Rule 12b-1 the Second Amended Adversary Complaint for lack of standing. Contrary to Baker v. Clark, the District Court mistakenly concluded that the Liberty and Pecuniary Injuries that Appellants assert are general grievances common to all residents of Puerto Rico and that the relief sought does not redress the alleged harm. This Court will examine de novo the determination of the District Court where it accepts as true all well-pleaded facts, draws on reasonable inferences in the plaintiff's favor, and see if they possibly narrate a claim for the facts in the complaint with its reasonable inferences established that the unions represent its members in all matters about the workers' well-being and negotiate and protect collective bargaining agreements. Lisbeth Mercado is a registered and willing voter living in Puerto Rico. In 1952, the Commonwealth of Puerto Rico was established through Act 600 of Congress based upon the republican form of government. It is a basic republican principle that the people of Puerto Rico have a constitutional right to vote for the Commonwealth officials entitled to deal with Puerto Rico's fiscal affairs. This is an essential element of the Commonwealth Constitution and you could see that in Articles 3 and 4 of the Constitution. In 2016, Congress enacted PROMESA which imposed upon appellants a non-voted seven-member oversight board with broad powers over the people and the local government that substantially altered those provisions of the Commonwealth democratic governance. Since the enactment of PROMESA, local political officials do not have any power to manage fiscal plans, budgets, and public policy matters over the Commonwealth, neither to review, supervise, or object to the oversight board's determination regarding these matters. As Justice Sotomayor said in the Aurelio Supreme Court decision, despite the board's wide-ranging veto-free authority over Puerto Rico, the solitary role PROMESA contemplates for Puerto Rican selected officials is this. The governor of Puerto Rico sits as an ex-official board member without any voting rights. No individual within Puerto Rico's government plays any part in determining which seven members now decide matters critical to the island's financial fate. So, after the enactment of PROMESA, appellants do not have the power to elect governmental officials with authority to control the Commonwealth fiscal affairs and public policy. As a consequence, appellants vote for the local... Counselor. Yes. Puerto Rico's General Assembly passed these four laws which abridge the contractual rights of your client. Even if we declared PROMESA somehow invalid and unconstitutional, those laws would remain on the books. Well, those laws would remain on the books, but the issue is that since the board is the utmost authority over the government and the board adopted those legislation, it's now mandatory, obligatory to the Commonwealth. And when PROMESA is determined to be unconstitutional, our clients will be restored in their voting rights and the government will be accountable to our clients because of their newly restituted voting rights. So, there is an option and a pathway for our clients to make the government roll back the austerity measures. Down the road, isn't it just purely speculation that there may be a vote which alters the makeup of the Puerto Rico General Assembly in such a way that you elect someone to maybe restore the rights that were abridged, the contractual rights that were abridged? No, because the legislature already started to roll back the austerity measures, as we will see in the next case about the collective bargaining agreement, there's two additional laws that roll back some of the prohibition. But right now, the issue is that since the board adopted those acts and they are mandatory, this court has decided that the public policy adopted in the fiscal plans are mandatory for the government. The government is not able to roll back any of the impairment laws. So, there is a connection between the fund adopting the austerity measures in the fiscal plans and the injury that is suffering my clients, Your Honor. The issue here is that... Wouldn't your theory mean that you would, in any municipal bankruptcy case, if the municipality passed measures to satisfy the bankruptcy court about how to manage their finances, the citizens of the city would be able to bring the exact challenge you're bringing here on the claim that the bankruptcy apparatus took away their right to vote? Well, the issue here is that PROMESA is different than Chapter 9. In terms of affecting the voting rights, your argument seems to be that the ordinary mechanisms of Puerto Rico government and politics can't operate because it's being done in the shadow of an actor that they can't vote for. Yes. In the case of Chapter 9 procedures, the debtor is the one who also has the power to enact legislation and the debtor, the municipality or the government is voted. The people of that county or that municipality voted for the people that are conducting the Chapter 9 procedures. Here, we don't have any option because the board is totally independent in their management of the Title 3 case. So, there is no connection between the actions of the board because the board, we don't have judicial review, we are not able to supervise the action of the board, neither the board is politically respondent to the people of Puerto Rico. That, in my argument, I submit your honor that that position of subjugation of the government of Puerto Rico make my clients not able to vote for fully empowered local political representatives. The thought is that the Puerto Rican government over which your vote does count, you're saying is acting to satisfy the board over which they have no power. Yes. That's typical, that's the same as a municipal bankruptcy where the city over which the residents do have control takes action to satisfy the bankruptcy court over which the would seem to suggest that even in that situation there'd be a voting rights challenge. That seems surprising to me. No, your honor. I believe that my argument is particularly for PROMESA where the board is conducting all the affairs. The board is determining the public policy and also is determining what happened in the Title 3 proceedings. So, there is no connection between the government and the voters and the action of the board. So, Judge Barron is trying to ask you, how does this situation differ from Detroit's bankruptcy? Because they mounted a similar challenge there. In Detroit, the city is the entity that is conducting the proceedings of the bankruptcy in Chapter 9. It was the laws here were passed by the Puerto Rico legislature. I'm sorry? The laws that are Puerto Rico legislature's laws. Your theory must be that they don't really have power because they feel that they need to act to satisfy the requirements of PROMESA, right? They are bound by the determination of the board regarding the austerity measures. They cannot change those laws right now because they don't have the authority because the fiscal plans are binding upon the government Let me ask you about that. Let's assume you were right and that PROMESA was unconstitutional. Then, wouldn't your legislature have had the option of, instead of passing the laws that they did, advancing exactly the same challenge that you're advancing here and having PROMESA declared unconstitutional? The government had the same problem because the government is subjugated to the action of the board and there is no way the government could change the policy determination of the board. So, they have the same problem. I don't think you're answering my question. My question was, if you're right that PROMESA is unconstitutional, couldn't the legislature have brought forward that plan by refusing to do what the board wanted it to do? Yes, I believe so, Your Honor. So, I think what we have here is the people you voted for made a decision that instead of challenging head-on the board and PROMESA, they would pass these laws instead. That was a political determination of the local officials, yes. And now you want us to undo that decision that the Puerto Rican legislature made. Yes, I understand that. But the determination of the local officials impaired the collective bargaining agreements of my clients. So, they are harmed by the actions of the local government and the oversight board adopted those determinations. So, both entities are impairing or affecting the pecuniary interests of my clients. That is not the only injury that we are claiming, Your Honor. We are also claiming that the people of Puerto Rico is totally disenfranchised because they cannot vote for the people that have full control over the fiscal affairs of Puerto Rico. So, if the board is not accountable to the people of Puerto Rico, the votes of the people of Puerto Rico are totally diluted or impaired. And that is an injury, in fact, that is recognized by Baker v. Carr and the case of Lyman of this court. So, we believe that we have accomplished, in this stage of the proceedings of the claims, the requirements to establish an injury in fact. Also, Your Honor, there is compensation. Let me ask you another related question. Suppose we declared PROMISA unconstitutional and throw it out, root and trunk, and then the Puerto Rican legislature said, you know, we were kind of pressured into doing this, but now that we look at this law, we think it is good for Puerto Rico, and so they didn't change it. Wouldn't you be in the same position vis-a-vis that law as you are now today? The issue is the same, because the entity with all powers is the board, and for as long as the board is operating in Puerto Rico, the people of Puerto Rico are disenfranchised. My question is, pretend for a moment the board has been thrown out and doesn't operate, but the Puerto Rican legislature, in its wisdom, decides to keep these four laws in place. Aren't you in exactly the same position in terms of your interest, your financial stake, or whatever? No, because we are claiming in the other case that is a sister case of this case that those laws also violate the constitutional provision that relates to the impairment of the obligations and contracts, so we have a remedy for that. If I understand, you are making to us two distinct claims of injury. One is an injury traceable to the impairment of the contract, but then I think you are saying there is a separate injury that arises from the infringement of what you contend is a voting right. Yes, correct. And that exists, even if I understand it, if the Puerto Rico laws had never been passed, the existence of MESA itself is the cause of that injury. And then your analogy is to Baker versus Carr. But in Baker, there was an unequal treatment vis-a-vis the voting population. Some voters were being advantaged in California relative to others. Yes, I know that. That's not true here, so how do you overcome that problem? Because it's a dilution of the power of the vote. A dilution relative to what? It's a dilution relative to what everybody had before. Now everybody has less. That's true of every preemption. I understand that dilution is with respect to the constitution. Any time a higher government preempts a lower government, the ambit of authority of the lower government's ability to vote has been restricted, but we don't think of that as a dilution of the right to vote. The right to vote is just as strong. It's just the ambit of authority that jurisdiction has has been reduced. So that's quite different than Baker. In the normal case, the utmost authority is also responsible to the voters. In this case, the water is not responsible to the voters. In the case the PROMESA is determined to be unconstitutional, my clients, the voters of Puerto Rico will be restored in all the power of their vote, because they would be able to elect people that is in control of the financial and fiscal affairs of the commonwealth. Right now, they are voting for people that don't have any control over those affairs that are essential for the government. There is no government if you cannot control the budget and the fiscal plans and the public policies regarding fiscal matters. Their vote is totally impaired and diluted with respect to the rights they had upon the commonwealth constitution before PROMESA. Also, I would like to say that... Judge, that's time. Your time is up. Thank you, counsel. Thank you. And could you state your name for the record, Mr. Harris? Yes. May it please the court. My name is Mark Harris. I represent the Financial Oversight and Management Board on behalf of itself and also on behalf of the commonwealth of Puerto Rico. And are you ready to proceed? Yes, your honor. Thank you very much. The appellants here are bringing a very broad attack on the entire legal framework governing the relationship between the United States and Puerto Rico. Primarily, they're attacking PROMESA, claiming that it violates a whole array of their constitutional rights. Even more broadly, they want a declaration that the United States is operating, in their words, an illegal colonial regime. The trouble is that appellants don't have Article 3 standing to bring these claims because they haven't shown, and they're not able to show, any concrete particularized injury caused by PROMESA or caused by this colonial regime. As Judge Barron noted, they have two different theories as to how they think they can show standing, but neither one of them works. The first one is that they're claiming that their injury, in fact, comes from the impairment of their collective bargaining agreements, which was the result of four laws that the commonwealth passed to deal with Puerto Rico's fiscal and economic crisis. Those laws are the subject of the next appeal, as your honors know. The trouble is that that injury is not connected to PROMESA. It's not redressable by the relief that they seek here, and it's not caused by PROMESA either. Secondly and separately, they seem to be arguing that there is some kind of a voting rights or political or social injury, which was also caused by the passage of PROMESA and the creation of the board. But this is not a typical voting rights injury. It doesn't work the same as the cases that they are citing, Baker v. Carr and this court's decision involving the Electoral College. In any event, even if the court were to rule that there was Article III standing, their claims fail as a matter of law. Let me turn to the first issue, which is the claim of standing from injury to the collective bargaining agreements. As your honors are aware, they themselves, the appellants, excuse me, the unions, agree that these impairments were the result of four laws passed by the Commonwealth, not by Congress. So it cannot supply standing because there won't be regressibility here. Judge Thompson, you basically articulated this point. Even if PROMESA were found unconstitutional, or really anything that the appellants are requesting here, it wouldn't change the four laws. It would not restore their collective bargaining agreements rights. If the relief that they request... Is it true that they cannot now repeal them? So the board has the power to block a repeal. We don't know, your honor, at this point whether or not the board would do that. We also don't know whether or not the Commonwealth would want to do that. It's all... Just on redressability, and I take the point, but I just want to understand what we're saying, because it may have effects on other oversight boards in many, many contexts when a locality gets in fiscal trouble. If it has the power to block the repeal, then wouldn't the redress be to remove that block? And then Puerto Rico would be free to choose to do what it wants. But right now, Puerto Rico is not free to choose what it wants. So the impairment can be attributed to a condition not of Puerto Rico's own choosing. And the relief would simply be to give that choice back to it. Your honor, there may be a different situation if Puerto Rico itself were bringing this case, but the appellants are bringing this case. They have to claim right now that they are being injured and that the relief they're seeking would be redressable. It's not redressable simply because one block might be removed. If there's no indication, they haven't pled, they haven't been shown that the legislature is inclined to do that. In fact... Is that not in their complaint, that without the block, it would be much more likely that the law would not be in place? I don't believe they have any factual allegations about this at all, your honor. And in fact, the evidence seems to suggest, or the record seems to suggest otherwise, the first of these four laws was passed in 2014. That's the first of the ones that they challenge. It's 26, excuse me, 66-2014 is the number of the statute. That law was passed before there was... Five minutes remain. Thank you. And before there was an oversight board. And in fact, all of these laws are very closely related. There's no indication there that the reasons that the legislature gave for why it needed to pass that law weren't the case. In other words, that there was an enormous fiscal and financial crisis going on. As I said, that law preceded anything that they're challenging here concerning the existence of PROMESA or the board's existence. For the same reason, there's a causation problem, which is the flip side of redressability, which is that it can't be traced. The original passage of these laws can't be traced to PROMESA because they started before PROMESA. And there's no doubt that the island is in a serious, really a catastrophic financial crisis. And the legislature took it upon itself to determine, to get its own house in order. That's really what happened here chronologically. Could you address the other Article 3 claim just about, take it outside the context of PROMESA for a second, but just a locality suddenly has the state come in, remove the city council and the mayor's control over the city's functions, invest it in an appointed oversight board. Is that not subject to any kind of constitutional challenge? I don't think so, Your Honor. I think you stated the problem very well. This is really not a typical voting rights challenge. They're not complaining that they didn't have the power to vote. They're also not complaining in the way of a voting dilution argument normally worked, which is that their votes don't have the efficacy that they normally would have because they're not able to elect their candidate of choice. This election would proceed, any election concerning Puerto Rican officials, would proceed exactly the way it always does. Any particular voter or the union's members, they have the right to cast their vote the same way. They have the same likelihood of electing the candidates they want to elect. The only difference is that they're alleging that the board, excuse me, that the officials that they elect, that governmental body doesn't have the same power it used to have vis-a-vis the federal government or the oversight board. But that really strikes me as a classic example of a non-concrete, non-particularized injury. That's what Lugin called a general interest in the proper application of the constitutional laws. That's a complaint about the structure of the government one level up. It's not a complaint that they don't have the power to vote or that their votes aren't worth what they should be worth because they can't elect their candidates. They're complaining that their government's relationship, their local government's relationship to a higher government or to another part of their government as the oversight board is, isn't to their liking. Would the General Assembly have standing? I don't know if the General Assembly would have standing, Your Honor, but I believe the General Assembly, or at least the Commonwealth, has brought claims against the oversight board. I believe there's actually a case that will be before this court relatively soon concerning the relationship, who has the power to reject whose recommendations or things like that. I don't know in this particular case whether they'd have that standing, but it's certainly if they feel that the law is unconstitutional, that's applied to them, they have power to challenge that. But individual citizens do not unless they can show that it's affecting a direct and particular injury on them. The case is really not like Lyman v. Baker, which was this court's case involving the Electoral College and the, I think it was Massachusetts system, about winner takes all voting for the Electoral College. In that case, the voters were complaining that the winner takes all system would deny their efficacy of their votes to choose particular electors. That's not what's happening here. They have the same power they always had to elect the officials that they vote for. As I said, the real complaint is about the relationship between Puerto Rico and the United States. But without any concrete stake like that, it's just an abstract dispute. It's not one that they have standing over. I was not planning, given my limited time, to address the merits of their claims. I'm happy to do that if the court has any questions. But I'll just say in general, none of these claims under the First Amendment or the 13th Amendment or the Fifth Amendment has merit. This court has rejected similar types of claims on many occasions concerning, say, their inability to vote for federal officials and the like. The court has no further questions. Thank you, Your Honor. Is Attorney Torrance ready to proceed? Is Attorney Torrance frozen? Attorney Torrance, can you hear us? I'm sorry, Judge. He appears to be frozen. We're going to try. And if you can hang on one minute. Judge, we're going to try and get him right back in now. Okay. I am back in. My tech problem seems to be getting worse. But I apologize and thank the court for its patience. Should I proceed? Could you introduce yourself for the record, please? Yes, Your Honor. May it please the court, Benjamin Torrance, Assistant United States Attorney, on behalf of the United States. Is he ready to proceed? Thank you, Your Honor. I have little to add to what Mr. Harris said, and I do not want to belabor the point. With respect to the injury to the collective bargaining rights and the allegation they've been diminished, I would reiterate his arguments and say they apply to the United States just even more so. To the extent that the traceability problem here is that the laws enacted by the Commonwealth Legislature would not necessarily be repealed. And then to go to the next level and to say that it's traceable, not only to the board, but to the United States, is just a bridge too far and too many links in the alleged chain of causation to support a justiciable case or controversy in this matter. Essentially, the relief they ask for is to declare PROMESA unlawful. And the way this case is shaped up, that would be basically akin to saying if the EPA or Immigration and Customs Enforcement or some other federal agency did something unlawful, then the statute creating that agency should be declared unlawful. And that's just not correct under the law. And the same applies under redressability, the redressability prong of the Lujan standing analysis, declaring the statute unlawful. Isn't that only true with respect to the claim that turns on the impairment of the contracts? In other words, with respect to their broader claim, which they may not have standing for either, but with respect to the broader claim that the injury arises from the existence of PROMESA, wouldn't the United States be the proper party? Well, I don't understand how they have articulated injury. I'm not asking that part. I'm asking insofar as that's the claim, isn't the United States the proper party to sue for that claim, even though the United States might win because there's no standing to bring it? I think that may be right. If the injury is a result of the existence, purely of the existence of the statute. But again, I don't think that they have articulated that. To the extent that the plaintiffs have alleged their second injury, disenfranchisement, no court has recognized a judicially cognizable injury in or just judicially cognizable right in that kind of broad political participation. The cases they cite are not relevant. And the salient point in this case is that the alleged injury, the alleged lack of voting rights comes directly from the constitution itself. As this court has held several times, the restriction on who can vote for members of Congress is a function of the constitution itself. Only residents of the states can do so. And so that makes the injury not a legally protected or judicially cognizable one. It also makes the injury not redressable because the redress that would be required would be a constitutional amendment. And of course, this court lacks the power to direct that or to direct the admission of Puerto Rico as a state, which would perhaps also redress that injury, but it's also outside this court's authority to grant. So the district court was correct in dismissing this case for lack of standing as a non-judiciable case or controversy. Again, I don't want to belabor the points Mr. Harris has made. So if the court has no further questions, we'll simply ask the court to affirm. Thank you, counsel. My colleagues have any other questions? All right, thank you. May I please the court? Yes, you may proceed. I would like to point out your honor that we are not claiming federal votes here. We are not claiming that appellants should vote for federal officials. We are claiming that our vote for the local officials is totally impaired. So there is no issue with the case law that established that in Puerto Rico, we don't have the right to vote for federal officials. We also want to point out in the issue of pecuniary interest that appellants are also creators and party interests in the Title III proceedings. And they are also participants of the retirement system of the Commonwealth of Puerto Rico that is also in Title III. So they are parties in interest that could challenge the constitutionality of the bankruptcy-like proceedings of PROMESA. In that respect, we are also impaired in our rights, property and pecuniary rights with respect to the retirement system. And therefore, we have standing to question the constitutionality of PROMESA. Therefore, we request from this honorable court to reverse the district court and remand the case for further proceedings. Thank you, counselor.